IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE

Civil Action No. 04-CV-01264-LTB-OES

MARY M. HULL,

      Plaintiff,

v.

UNITED STATES DEPARTMENT OF LABOR,

      Defendant.

_____

# ORDER

_____

Plaintiff Mary Hull ("Hull") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq., to obtain documents from the United States Department of Labor ("DOL") regarding its investigation into the pension and benefit plan of the Qwest Corporation ("Qwest.") In the course of this litigation, the number of pages of documents in dispute has narrowed from approximately 6000 to approximately 500. The DOL has moved for summary judgment dismissal of Hull's claims. Hull has petitioned for *in camera* review of the documents the DOL still withholds. The motions are adequately briefed and oral argument would not materially aid their resolution. For the reasons discussed below, the DOL's motion is GRANTED in part and DENIED in part, and Hull's motion is GRANTED in part and DENIED in part.

## I.   BACKGROUND

This case is about an ongoing tug of war between Hull and the DOL over the DOL's reports from an investigation of the Qwest Pension Plan ("QPP.")

Hull is a former employee of U.S. West, having retired in February 1990. She is a

participant in the QPP and receives a monthly service pension annuity from the QPP. Hull is

associated with the Association of U.S. West/Qwest retirees ("Association.").

The DOL is the federal agency responsible for oversight of employee benefit plans in

compliance with the Employee Retirement Income and Security Act ("ERISA"), 29 U.S.C. §

1002(13), and may bring actions against employee benefit plans for breach of fiduciary duty. 29

U.S.C. § 1132(a)(2).  In mid-2000, Qwest merged with U.S. West.  Shortly thereafter, members

of the Association became concerned about rumors of a DOL investigation of the Qwest pension

plan, apparently for its implications for the value and security of their pension benefits.

On March 3, 2004 Hull sent a FOIA request to the DOL, requesting

> ". . . all agency records of the Department of Labor's enforcement
> investigation, audit and examination from 2001 to the present of the
> Qwest Pension Plan, formerly known as the U.S. West Pension Plan,
> including written and electronic (e-mail) communications with plan
> administrators and fiduciaries, plan legal counsel, plan actuaries, plan
> accountants and plan advisors incident to the ongoing investigation.
> This request includes interview reports, informal and formal discovery
> requests, subpoenas and orders, and the written and electronic (e-mail)
> responses given thereto."

The DOL's Kansas City office responded March 4, 2004, the following day, denying the

request entirely, citing FOIA Exemption 7(A), 5 U.S.C. 552(b)(7)(A). The letter stated, "This

exemption protects information concerning pending or prospective law enforcement proceedings

the disclosure of which could reasonably be expected to interfere with that proceeding."  Hull,

following the appropriate procedures, appealed this denial to the Solicitor of Labor on March 16,

2004.

On June 16, 2004, more than 70 days after the statutory deadline, the Solicitor of Labor

2

responded, upholding the decision by the Kansas City Office and reiterating that the DOL was

withholding the documents under Exemption 7(A). The Solicitor of Labor stated that this denial

constituted a "final agency action," clearing the way for a federal lawsuit as the next step in the

FOIA process.

On June 18, 2004, before receiving the June 16, 2004 denial, Hull filed this action. Hull

challenged the blanket denial of all documents under Exemption 7(A) and requested that all

documents responsive to Hull's request be presented to the Court for *in camera* review to

determine if the documents are within the scope of Exemption 7(A).

On October 19, 2004, after filing an answer to Hull's Complaint but before filing any

motions in the case, the DOL notified Hull that it was now "prepared to release the disclosable

records from the ongoing investigation of the Qwest Pension Plan." On December 15, 2004 the

DOL released to Hull one CD, one floppy disk and 4,275 pages of information from "the ongoing

investigation of the Qwest Pension Plan," but also withheld and redacted some information. The

DOL withheld about 1500 pages under Exemption 7(A), and also withheld a subset of this

information under FOIA Exemptions 3, 4, 5, 7(A), 7(C),  and 7(D). The DOL explicitly reserved

the right to raise other exemptions later in the process should Exemption 7(A) prove to be invalid,

including for documents it was at that time withholding only under Exemption 7(A).         On

April 1, 2005 the DOL filed a motion for summary judgment seeking dismissal of the FOIA

action, arguing that its decision to withhold and redact the remaining documents complied with

FOIA. The DOL submitted a "*Vaughn* index," indicating which documents were withheld and

why, and also provided affidavits justifying its decision. On April 7, 2005, the DOL ended its

investigation of the QPP, but did not immediately notify Hull. On April 20, 2005, Hull filed a

response to the DOL motion for summary judgment, and filed her own petition for *in camera* inspection of the documents the DOL withheld.  Hull challenged the DOL's use of Exemption 7(A) and argued that the DOL acted in bad faith by not responding to her FOIA request within the statutory time period and by only providing documents after Hull had initiated this lawsuit.

On May 18, 2005, the DOL replied to the Hull response, revealing that it closed its investigation of the QPP April 7, 2005, rendering its reliance on Exemption 7(A) moot, since this exemption is only available during the pendency of an investigation. The DOL filed an unopposed motion to process the documents it had withheld under Exemption 7(A) to assess which should be released and which should be withheld under other exemptions.

On June 27, 2005 the DOL completed the processing of the documents originally withheld under Exemption 7(A), releasing about 1200 additional pages, but redacted and withheld others under Exemptions 2, 7(C) and 7(E), and withheld eleven documents, consisting of fifty pages, under Exemption 5.  The DOL again provided a *Vaughn* index and an affidavit to support its decision.

On July 11, 2005, the DOL filed a new motion for summary judgment, arguing that the June 27, 2005 disclosure fully complied with FOIA with regard to the documents that had previously been withheld only under Exemption 7(A). On July 29, 2005 Hull filed a response renewing her motion for *in camera* review of the documents withheld June 27, 2005 under Exemption 5, and requesting release of the segregable portions of the documents withheld under Exemption 5, release or *in camera* review of certain documents originally withheld in December 2004 under Exemption 4, release of several documents originally withheld under Exemption 7(A) not accounted for in the June 2005 release, and release of 11 computer disks for which the DOL

4

claimed no exemption. Hull also claimed costs and attorney fees, arguing that she had substantially prevailed in this case.

On August 18, 2005 the DOL replied to Hull, defending the withholding of the eleven documents under Exemption 5, asserting that the documents not accounted for were in fact delivered to Hull and arguing that Hull waived her right to challenge the documents originally withheld under Exemption 4. In the alternative, the DOL defends the withholding of these documents under Exemption 4. The DOL also asserts that it had belatedly discovered that the eleven computer disks contained seventeen documents that it had not processed through FOIA, and that it will process these documents "as soon as possible."

So, after approximately 20 months of written exchanges and litigation between Hull and the DOL, the issues and documents in dispute appear as follows: 1) the DOL has released approximately 5500 out of about 6000 pages from its file on the QPP investigation; 2) Hull seeks *in camera* review of approximately 450 remaining pages, approximately 50 pages withheld under Exemption 5 and the remainder withheld under Exemption 4; 3) Hull seeks the contents of eleven computer disks identified as part of the record but for which the DOL asserts no exemption; 4) Hull seeks attorney fees and costs incurred thus far in this action; and 5) the DOL seeks summary judgment, denial of Hull's motion and dismissal of the complaint.

## II.  STANDARD OF REVIEW

The Freedom of Information Act ("FOIA") provides the public an enforceable right of access to federal agency records, subject to nine exemptions. *Anderson v. Dep't of Health and Human Services,* 907 F.2d 936, 941 (10th Cir. 1990). The essential purpose of FOIA is to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check

against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978). The FOIA is broadly construed in favor of disclosure, and its exemptions are to be narrowly construed. *Anderson,* 907 F.2d at 941. "The federal agency resisting disclosure bears the burden of justifying non-disclosure." *Id.*   A district court reviews *de novo* an agency's decision to withhold information, and must determine whether the information denied properly falls into a specific enumerated FOIA exemption. *Id.*

To satisfy its burden under FOIA to demonstrate that withheld documents properly fall within a statutory exemption, an agency typically produces a *Vaughn* index of non-disclosed documents, indicating the documents responsive to the plaintiff's request and providing the reasons for non-disclosure "in sufficient detail to allow a Court to make an independent assessment of the claims for exemptions." *Rugiero v. U.S. Dep't of Justice,* 257 F.3d 534, 544 (10th Cir. 2001). An agency may also provide affidavits or statements in support of its claims for exemption. *Id.*

## III.  DISCUSSION

I address in turn the DOL's motion for summary judgment, Hull's petition for *in camera* review of the withheld documents and Hull's request for attorney fees and costs.

A.    The DOL's Motion for Summary Judgment

The purpose of a summary judgment motion is to assess whether trial is necessary.  *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  I shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit under the

6

governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Most FOIA cases are disposed of on motions for summary judgment. *Rugiero,* 257 F.3d at 544. FOIA cases "are especially amenable to summary judgment because the law, rather than the facts, is the only matter in dispute." *Raytheon Aircraft Co. v. U.S. Army Corps of Engineers,* 183 F.Supp.2d 1280, 1283 (D. Kan. 2001). In this case, Hull and the DOL, largely do not dispute the facts, making this case appropriate for summary judgment analysis.

1.      Exemption 4

The DOL seeks summary judgment dismissal of Hull's claim that the DOL inappropriately withheld approximately 400 pages of documents as confidential commercial and financial information under Exemption 4. 5 U.S.C. § 552(b)(4). The DOL argues first that Hull waived her right to contest the denial of these documents. The DOL withheld these documents originally in December 2004, invoking Exemption 7(A) and Exemption 4. Because Hull in December 2004 disputed only the applicability of Exemption 7(A) but did not contest the other exemptions the DOL invoked, the DOL asserts that Hull may not now contest their denial, citing *Rafferty v. NYNEX Corp.,* 744 F. Supp. 324, 331 (D.D.C. 1990).

I find this argument unconvincing. My review of an agency's denial of a FOIA request is *de novo*. 5 U.S.C. § 552(a)(4)(B). I must determine whether withheld documents fall within a statutory exemption. *Anderson,* 907 F.2d at 941. Just as an agency may raise an exemption in district court that it did not raise during the administrative phase of a FOIA request, *Living*

*Rivers, Inc. v. U.S. Bureau of Reclamation*, 272 F. Supp.2d 1313, 1318 (D. Utah 2003), I have the discretion to consider plaintiff's objections to these exemptions during later phases of proceedings. Moreover, while Hull's response to the DOL's April 1, 2005 motion for summary judgment does not refer specifically to exemptions other than 7(A), Hull's motion for *in camera* review and her affidavit explicitly address <u>all</u> withheld documents, not just the documents withheld solely under Exemption 7(A). In light of these considerations, and FOIA's bias in favor of disclosure, it is appropriate to reach the merits of the question.

The DOL next argues that it properly withheld these documents under Exemption 4. This exemption allows federal agencies to withhold documents that contain "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). The DOL relies on the second prong of Exemption 4, asserting that these documents contain confidential commercial or financial information. Hull does not contest that this information is commercial and obtained from a person. The sole issue in dispute is whether this information is confidential.

Determining if information is confidential under Exemption 4 involves a two part analysis. First, I must ascertain whether the information was given voluntarily. *Utah v. U.S. Dep't of Interior,* 256 F.3d 967, 969 (10th Cir. 2001). Hull does not dispute that this information was provided voluntarily. Second, if the information is provided voluntarily, it "is deemed confidential if it is of a kind that would customarily not be released to the public by the person from whom it was obtained." *Merit Energy Co. v. U.S. Dep't of Interior* 180 F.Supp.2d 1184, 1188 (D.Colo. 2001). Accordingly, to justify withholding this information under Exemption 4, the DOL must show that there is no factual dispute that this information is not the kind that Qwest typically

8

makes public.

The DOL withheld from Hull five sets of documents under Exemption 4. These are approximately 89 pages the DOL refers to as "Investment Committee Documents," 127 pages of documents that the DOL refers to as "Employee Benefits Committee Documents and Internal Qwest Documents Regarding Plan Reimbursements," 125 pages of Qwest Contracts with Towers Perrin, Watson Wyatt and Bankers Trust ("Service Contracts"), 28 pages of the Qwest Asset Management Company Annual Report, ("Annual Report") and 23 pages of the Plan Bond, Fiduciary Liability Policy and Reimbursements.

For most of this information, the DOL has met its burden. The DOL has provided letters and affidavits from two Qwest officials specifically addressing most the information at issue. Felicity O'Herron, the Qwest Director of Compensation and Benefits, states in an affidavit that Qwest considers the Investment Committee Documents, the Employee Benefits Committee Documents and the Annual Report as "confidential commercial or financial information" and that she is "unaware of any occasion on which it has ever made [these documents] available to the public." Similarly, Alyson Buchanan, Director of Risk Finance, Insurance and Claims for Qwest, states in an affidavit that Qwest considers the Qwest Fiduciary Liability Insurance Policies to be "proprietary and confidential commercial and financial information," and that she is "unaware" of these policies ever being made public.

Hull does not directly dispute any of the facts contained in these affidavits. Hull only argues, generally and without citing authority, that Exemption 4 is inappropriate for these documents, and that this information is not confidential because it relates to a pension plan, not to an individual or to an individual's personal financial information. However, "[u]nsupported

9

conclusory allegations . . . do not create a genuine issue of fact" to defeat a motion for summary judgment, *L&M Enterprises, Inc. v. BEI Sensors & Systems Co.,* 231 F.3d 1284, 1287 (10th Cir. 2000). Hull's general statements do not raise a fact question as to whether this information is customarily released to the public. For these documents, the DOL has met its burden and the DOL's motion for summary judgment is granted.

The DOL also withholds under Exemption 4 125 pages of Service Contracts. The Qwest affidavits do not address these documents. Rather, the DOL provides an affidavit from Miriam McD. Miller, co-counsel for Administrative Law in the DOL Office of the Solicitor. Miller asserts that she is familiar with the DOL's procedures for handling FOIA requests and that she is familiar with this specific FOIA case. Miller states that the public release of these documents "could put the contracting parties at a disadvantage by revealing the terms of their agreements to competitors" and that these types of agreements "are not customarily released to the public."

Affidavits in a motion for summary judgment must be based on the affiant's "personal knowledge," and must consist of admissible evidence. Fed.R.Civ.P. 56(e). Miller's affidavit does not meet this test. Miller works for the DOL, not for Qwest. Her affidavit goes beyond Miller's own stated expertise in the DOL's FOIA processes or internal actions. The DOL obtained these documents from Qwest, and the documents implicate Qwest's relations with its contractors. Miller's affidavit does not contain any personal knowledge of the competitive position of Qwest and its contractors, nor does she claim expertise on how Qwest "customarily" handles its documents. Unlike the other documents withheld under Exemption 4, here the DOL offers a government official's speculations about Qwest's practices and potential harm. In light of FOIA's bias for disclosure, and the requirement in a motion for summary judgment that affidavits reflect

10

the affiant's personal knowledge, Miller's affidavit is insufficient. I find and conclude that the DOL has failed to meet its burden to show that the Service Contracts are exempt from disclosure under Exemption 4, and the DOL's motion for summary judgment with respect to these documents is denied.  However, because Hull has not filed a motion for summary judgment to release these documents, I do not at this time order the DOL to release these documents to Hull.

2.      Exemption 5

The DOL withheld as "deliberative process" under Exemption 5 eleven documents consisting of approximately 50 pages that were withheld in June 2005, and two documents totaling 9 pages that were withheld in December 2004. (Hull also claims that the DOL withheld without explanation eight documents totaling approximately 300 pages. The DOL states that these documents were turned over to Hull, with redactions. It is unclear if this disagreement is clerical or substantive. To the extent that these documents are truly in dispute, the analysis below also applies to them.)

FOIA Exemption 5 allows agencies to withhold "inter-agency or intra-agency memorandums or letters, which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 has been construed to include communications that reveal an agency's deliberative process. *Casad v. U.S. Dep't of Health and Human Services*, 301 F.3d 1247, 1251 (10th Cir. 2002).

To withhold a document as part of an agency's deliberative process, the agency must satisfy several specific steps. A federal agency must first show that a document is "inter-agency" or "intra-agency." *See Id.* at 1253. Hull does not dispute that all of the documents at issue here

11

are communications among DOL officials or between DOL officials and officials at other agencies. An agency must next show that the document is "both pre-decisional and deliberative." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). A document is pre-decisional if it is "antecedent to the adoption of an agency decision." *Jordan v. United States Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978)(en banc). A document is deliberative if it is a "direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975).

The DOL contends that all of these documents pre-date the decision to close the investigation into the QPP, and that each document "contains the deliberations of agency officials concerning the investigation of the Qwest Pension Plan." Hull argues that in fact several of these documents are undated, so it is unknown if they pre-date the decision to close the investigation. Moreover, Hull asserts that the DOL never states directly that these documents "make recommendations or express opinion on a policy matter."

I find these arguments for denying the DOL's Exemption 5 claims to be unpersuasive. Only three documents totaling 15 pages are undated, and Miller's affidavit states that all of the documents pre-date the closing of the Qwest investigation. Hull provides no contradictory evidence. Moreover, Hull cites no authority, and I am not aware of any, requiring an affiant in a FOIA case to repeat the precise language of *Vaughn* in order to claim the deliberative process exemption.

However, it is still necessary for an agency claiming a FOIA exemption to provide a "relatively detailed analysis" of the withheld documents. *Vaughn,* 484 F.2d at 826. The agency's

12

description and explanation of the documents should "reveal as much detail as possible as to the nature of the document, without actually disclosing information that deserves protection." *Oglesby v. U.S. Dep't of Army,* 79 F.3d 1172, 1176 (D.C. Cir. 1996).  Agency affidavits and statements that are "vague and conclusory" are insufficient to support summary judgment. *PHE, Inc. v. Department of Justice,* 983 F.2d 248, 252 (D.C. Cir. 1993). An agency seeking to withhold a document as part of a deliberative process has the burden of "establishing what deliberative process is involved, and the role played by the documents in issue in the course of that process." *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 868 (D.C.Cir. 1980). Where portions of a document are exempt, the agency must provide "any reasonably segregable portion" of a document after deleting the exempt portions. 5 U.S.C. § 552(b).

Here, the DOL relies on a *Vaughn* index of documents withheld and redacted, and two affidavits from Miller, one justifying the documents denied in December 2004 and one justifying the documents denied in June 2005.  For most of these documents, the *Vaughn* index provides only a one-sentence statement. For example, the *Vaughn* index describes Form 205 only as a form "summarizing details of prior Qwest investigations," and states that the form "contains data considered by the agency in reaching its decision." The first Miller affidavit states that this document "plays a role in the Department's ultimate determination of what course of action to take with regard to Qwest," and "was created during the investigative phase of (the DOL's) decision-making process regarding the outcome of this case."  This statement applies to three documents withheld on April 1, 2005 while the Qwest investigation was still open.

The DOL's justification for withholding documents under Exemption 5 in June 2005 is even thinner. For these eleven documents, the *Vaughn* index contains a few words describing the

document (for example "DOL's draft tolling agreement with handwritten comments," or "DOL referral memorandum from Eagan to Smith"), cites Exemption 5, and indicates "deliberative process."

The second Miller affidavit fails to shed additional light. It contains no new descriptions of the documents, simply restating the one phrase description from the *Vaughn* index.  Miller's explanation for invoking the privilege is generic, stating for all eleven documents that "each document contains the deliberations of agency officials concerning the investigation of the Qwest Pension Plan. Accordingly, all eleven documents listed above are covered by the deliberative process privilege and therefore exempt from disclosure under FOIA Exemption 5." The affidavit also states, generically for each of the documents, that "the privileged material in this document cannot be meaningfully segregated from the non-privileged material."  This is essentially the total information the DOL provides for the eleven withheld documents.

I find and conclude that the *Vaughn* index and the Miller affidavits are insufficient to justify the withholdings under Exemption 5. These summary explanations are "vague and conclusory," *PHE, Inc.,* 983 F.2d at 252, and do not explain the role of the document in the agency decision process. *Coastal States,* 617 F.2d at 868.  Two factors significant to assessing the validity of this exemption, the nature of the authority vested in the author of the document and the positions in the agency hierarchy occupied by the document's author and recipient, *Senate of the Commonwealth of Puerto Rico on Behalf of Judiciary Committee v. United Sates Department of Justice*, 823 F.2d 574, 586 (D.C. Cir. 1987), are notably absent from the record here. While the documents on their face are interagency, the record here does not support a determination that they are, in fact, deliberative. A blanket statement by a DOL official claiming that all of these

14

documents are part of the agency deliberation is insufficient to justify the deliberative process exemption.

Moreover, Miller's affidavit affirms her knowledge of her agency's FOIA process, but is silent on her personal familiarity with the DOL investigation of Qwest. Miller states that the information contained in the affidavit is based on her personal knowledge or by information provided to her, but the DOL does not provide the affidavit of anyone familiar enough with the nature of the investigation to state, with respect to each document, the role the document played in this investigation. An agency affidavit cannot justify non-disclosure when it "merely parrot[s] the language of the statute and [is] drawn in conclusory terms." *Anderson,* 907 F.2d at 942. Yet, this is the essence of the Miller affidavits,  legal arguments containing conclusory generic statements about the documents.

I find and conclude that the DOL has failed to meet its burden in regard to the documents withheld under FOIA Exemption 5.  With respect to these documents, the Government's motion for summary judgment is denied.

3.      The Missing Disks

Hull contends that the DOL offers no justification for denying eleven computer disks listed in the *Vaughn* index. The DOL responds that these disks contained documents kept on the hard drive of the investigator of the Qwest case, and that the DOL only discovered during this litigation that seventeen of these documents were not printed out and placed in the Qwest Administrative file, and were thus not processed by the DOL as part of Hull's FOIA request.  The DOL states that it is now processing these documents and will move for summary judgment on

15

any parts of these documents it considers exempt.  Since the DOL states that its current motion

for summary judgment does not apply to these documents, and that it has not at this time decided

to withhold these documents, no judicial action as to these documents is necessary at this time.

B.      Plaintiff's Motion for *In Camera* Review of the Withheld Documents

        Hull petitions this Court to exercise its discretion to review the denied documents *in*

*camera*  to ascertain if the DOL properly withheld them. 5 U.S.C. § 552(a)(4)(B). A district court

has broad discretion in deciding whether or not to grant an *in camera* review. *Carter v. U.S.*

*Dep't of Commerce,* 830 F.2d 388, 392 (D.C. Cir. 1987).  While there are no specific criteria that

govern this decision, among the factors I consider are whether the affidavits submitted by the

agency are too vague to allow review of the agency's claims, whether the number and size of the

documents at issue would place an "onerous burden" on the Court, and any evidence of agency

bad faith in withholding the documents. *Quinon v. F.B.I.*, 86 F.3d 1222, 1228 (D.C. Cir. 1996). I

also may consider whether the dispute is over the contents of the documents, in which case *in*

*camera* review may be helpful, or whether the dispute is over whether the exemption in question

applies to the documents, in which case *in camera* review is of little help. *Id.*

        I have already determined that the DOL has met its burden to show that most of the

documents it withheld are covered by Exemption 4. For these documents, *in camera* review is

unnecessary.  Conversely,  I have also concluded that the DOL has not met its burden to justify

withholding the eleven documents under Exemption 5, and the three Service Contracts under

Exemption 4 (see above.) For these documents, I will  consider *in camera* review.

        From the record here it is unclear if Hull and the DOL dispute the contents of the

documents or the application of exemptions to the documents. For the Service Contracts the only

16

issue is whether they are properly covered under Exemption 4, that is, whether revealing these documents could place Qwest at a competitive disadvantage and whether these documents are customarily released to the public. As discussed above, the DOL has no real information on these questions and Qwest has provided no information relevant to these documents. However, an *in camera* review could not plausibly shed light on these questions either.  I therefore conclude that *in camera* review of the Service Contracts is unnecessary.

The dispute between Hull and the DOL regarding the documents withheld under Exemption 5, unlike the Service Contracts, involves the contents of the documents. The DOL has explained, without apparent dispute by Hull, the criteria for deliberative process, but provides insufficient detail to determine if these documents are covered. Accordingly, the contents of the documents, and not their interpretation, is in dispute.  Unlike the Service Contracts, these documents are the proper subjects of *in camera* review. Moreover, these documents total 62 pages, which does not constitute an onerous burden on this Court.

Hull also argues that she is entitled to *in camera* review because of the DOL's bad faith throughout this litigation in its response to her FOIA requests.  An agency's bad faith, either in its handling of the FOIA request or in the underlying conduct which generated the documents at issue, can be sufficient to defeat a motion for summary judgment and may be a strong factor in granting a motion for *in camera* review. *Jones v. FBI,* 41 F.3d 238, 242-243 (6th Cir. 1994).

The standard for a finding of bad faith is "very high" and usually requires "strong evidence." *Rugiero,* 257 F.3d at 546-547. A plaintiff can make a showing of bad faith where there is evidence of a government cover-up, or where releasing certain documents might publicly embarrass an agency. *Jones,* 41 F.3d at 243.  A plaintiff cannot show bad faith merely by alleging

17

"evidentiary discrepancies," *Accuracy in Media Inc. v. Nat'l Park Serv.,* 194 F.3d 120, 125 (D.C. Cir. 1999), a single instance of failing to provide a document or an inadequate search for documents. *Rugiero,* 257 F.3d at 546.

Here, Hull does not claim that the documents reveal substantive agency mis-conduct.  Nor does she contend that the agency is engaged in a cover-up. Rather, Hull asserts that the nature of the DOL's response to her FOIA request over a period of almost 18 months shows a pattern of bad faith in failing to disclose documents to which Hull is legally entitled under FOIA.

Hull asserts that the DOL showed bad faith by (1) failing to respond to the initial FOIA request in a timely fashion; (2) issuing a blanket denial of all documents under Exemption 7(A) prior to Hull's filing of a complaint but only disclosing detailed information after Hull initiated her lawsuit; (3) denying all information under Exemption 7(A) as relevant to a pending investigation and then disclosing substantial information while the investigation was allegedly still pending; (4) initially withholding some information to protect the identity of an investigator and then providing the name of that investigator in a disclosed document; (5) ending the Qwest investigation April 7, 2005 but not informing Hull until May 18, 2005, after Hull's attorney had responded to a DOL motion rendered moot by the end of the investigation; (6) the absence of any documents in the file disclosed to Hull between May 2004 and April 2005, suggesting that the Qwest investigation in fact ended in May 2004 and that the DOL kept this investigation open for the sole purpose of denying documents as part of an ongoing investigation; and (7) belatedly discovering 17 documents pertinent to Hull's request only after Hull identified a discrepancy in the DOL's *Vaughn* index. Hull argues, cogently, that a citizen should not have to file a lawsuit to make a federal agency comply with the law. An agency that has committed this many questionable acts in

18

response to a FOIA request, Hull contends, lacks credibility to assert a FOIA exemption and the court should therefore deny the DOL's motion for summary judgment and subject any withheld documents to *in camera* review.

The DOL does not respond to these allegations of bad faith, except to state that the absence of documents between May 2004 and April of 2005 reflects only that the DOL is not required to provide documents created after March 3, 2004, the date of Hull's FOIA request, citing 29 C.F.R. § 70.20(f). The credibility of this statement is questionable, however, since the DOL did release at least three documents dated after March 3, 2004: one dated March 25, 2004, one dated April 8, 2004 and one dated May 3, 2004.

More significantly, Hull's cumulative evidence shows a disturbing trend of agency behavior. While any one of the instances Hull cites might be attributable to mistake, oversight or lack of internal agency coordination and communication, Hull's extensive list of agency conduct suggests a pattern of obstructing Hull's FOIA request and indicates that the DOL was not behaving in the spirit of FOIA, providing information in an open fashion to enable citizens to hold their government accountable. *Anderson,* 907 F.2d at 941.

In light of the very high threshold for a finding of bad faith, Hull's argument by itself does not persuade me to deny summary judgment on the documents withheld under Exemption 4 that are addressed by the Qwest affidavits. I am not aware of any authority, and Hull does not provide any, that supports denying otherwise-appropriate summary judgment because an agency is uncooperative or inept and engages in behavior that costs a requestor unnecessary legal fees. Hull's evidence of bad faith is not sufficient to disturb my findings regarding the documents withheld under Exemption 4. However, in light of the vague and conclusory nature of the

affidavits submitted to justify withholding of the documents under Exemption 5, Hull's evidence strengthens my conclusion that these documents should be submitted for *in camera* review.

I therefore find and conclude that the documents the DOL seeks to withhold under Exemption 5, identified by name on pages 11-13 of Defendant's Reply in Support of Defendant's July 11, 2005 Motion for Summary Judgment and Response to Plaintiff's Petition for *In Camera* Review, shall be submitted to the Court for *in camera* review.

C.      Has Hull Substantially Prevailed to Justify Awarding Costs and Fees?

Hull argues that she is entitled to attorney fees and costs because her litigation has resulted in the DOL releasing approximately 5500 pages of about 6000 pages responsive to her request. Plaintiffs may recover attorney fees and costs in FOIA litigation if they have "substantially prevailed." 5 U.S.C. § 552(a)(4)(E). The record strongly suggests that Hull's lawsuit prompted the DOL to release this information.

However, the Supreme Court has ruled that in fee-splitting statutes, like FOIA, parties only "substantially prevail" when they achieve a "court-ordered material alteration of the legal relationship of the parties," through either an "enforceable judgment on the merits" or a "court-ordered consent decree." *Buckannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources, et al.,* 532 U.S. 598, 604 (2001). *Buckannon* specifically rejected the "catalyst" theory that allowed recovery of attorney fees and costs where the defendant's voluntary action "accomplished what the plaintiff sought to achieve by the lawsuit" if it did not involve "a corresponding alteration in the legal relationship of the parties." *Id.* at 605.

Though *Buckannon* was not a FOIA case, the D.C. Circuit Court of Appeals and several other courts have applied *Buckannon* to FOIA, ruling that a FOIA plaintiff can recover attorney

20

fees and costs only if it achieves a judicial ruling in its favor. *See Oil, Chemical & Atomic Workers International Union v. Department of Energy,* 288 F.3d 452, 455 (D.C. Cir. 2002), *Union of Needletrades v. INS,* 336 F.3d 200, 206 (2d Cir. 2003), and *Landers v. Dep't of the Air Force,* 257 F. Supp.2d 1011, 1012 (S.D. Ohio 2003).

The Tenth Circuit has not yet ruled on the application of *Buckannon* to a FOIA case. Prior to *Buckannon*, the Tenth Circuit interpreted the "substantially prevailed " language in FOIA to allow recovery of attorney fees and costs if "the lawsuit was reasonably necessary and substantially caused the requested documents to be released." *Gowan v. U.S. Dep't of Air Force,* 148 F.3d 1182, 1195, (10th Cir. 1998). The Tenth Circuit, however, has applied *Buckannon* to other statutes. *See Griffin v. Steeltek, Inc.,* 261 F.3d 1026, 1029 (10th Cir. 2001) (applying *Buckannon* to "prevailing party" language in Americans with Disabilities Act, 42 U.S.C. § 12205.) I therefore find and conclude that Hull is not entitled to attorney fees and costs at this time. Hull has not yet won a judicial decree or order, despite the strong evidence that her lawsuit prompted the DOL's disclosure of the information in this case.

I note without deciding that it is possible that where an agency engages in sufficiently serious acts of bad faith in failing to comply with FOIA, or in delaying compliance with FOIA, in order to impose onerous burdens on a plaintiff, the rule of *Buckannon* may not apply. The rule of *Buckannon* does not necessarily govern the case of an agency deliberately delaying compliance with a statute, like FOIA, and then complying only after extensive litigation but before a negative judicial judgment precisely to avoid paying costs and fees and to impose greater burdens on the plaintiff.  Hull's evidence here is enough to raise this issue, but not enough to resolve it. I leave open the question of whether sufficient evidence of agency abuse of the FOIA process might be

21

sufficient to carve an exception to the rule that only a  change in the legal relationship of the parties is sufficient to grant fees and costs under FOIA.

Therefore it is so Ordered that:

1) The DOL's Motion for Summary Judgment as to the Service Contracts [Doc 23] is DENIED,

2) The DOL's Motion for Summary Judgment as to the remaining documents withheld under Exemption 4 [Doc 23] is GRANTED,

3) The DOL's Motion for Summary Judgment as to the documents withheld under Exemption 5 [Doc 23] is DENIED,

3) Hull's Motion for *in camera* review as to the documents the DOL withheld under Exemption 5 [Doc 24] is GRANTED;

4) Hull's Motion for *in camera* review as to the documents the DOL withheld under Exemption 4 [Doc 24] is DENIED, and

5) Hull's Motion for attorney fees and  costs [Doc 24] is DENIED WITHOUT PREJUDICE.

**DONE and ORDERED,** this ___2nd___ day of December, 2005 at Denver, Colorado.


___s/Lewis T. Babcock_____
United States District Chief Judge