**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge**

Civil Action No. 04-cv-01264-LTB-PAC

MARY M. HULL,

      Plaintiff,

v.

UNITED STATES DEPARTMENT OF LABOR,

      Defendant.

---

## Order

---

      Plaintiff Mary M. Hull ("Hull") moves for attorney fees and for a judicial decree against defendant United States Department of Labor ("DOL") in this case under the Freedom of Information Act ("FOIA"), 29 U.S.C. § 552(a)(4)(E) & (F). For the reasons stated below, Hull's motion is GRANTED, in part and DENIED, in part.

## I.  BACKGROUND

      Hull first filed this FOIA request for records of the DOL investigation of the Qwest Pension Plan ("QPP") in June of 2004. In the almost two years since, the DOL has provided most of the roughly 6500 pages of documents relevant to her request.  My previous Order of December 2, 2005 (Docket # 28) ("December 2005 Order")  describes the history of this action up to that point. That Order addressed about 450 pages of documents in dispute, denying DOL summary judgment on withholding about 125 pages of Service Contracts under FOIA exemption 4, and directing the DOL to submit about 62 pages of documents for *in camera* review.  On January 13,

2006, this Court issued an Order requiring the DOL to disclose nine pages of the 62 pages subject to *in camera* review ("January 2006 Order")(Docket #32).

Since January of 2006, despite some disagreements about the remaining documents, and some motions filed, the parties have resolved their outstanding disputes regarding the documents, and the only remaining issue is attorney fees and costs.

## II. Standard of Review

Courts may assess attorney fees against government agencies in FOIA cases where the FOIA requestor "substantially prevails" in its claims against the agency. 5 U.S.C. § 552(a)(4)(E). A party "substantially prevails" in fee-shifting statutes, such as FOIA, when he achieves a "material alteration of the legal relationship of the parties," such as through an "enforceable judgment on the merits" or a "court-ordered consent decree." *Buckhannon Bd. and Care Home, Inc., v. West Virginia Dep't of Health and Human Resources, et al.,* 532 U.S. 598, 604 (2001). In the December 2005 Order I concluded that this definition governs FOIA cases, and determines if a party is eligible for attorney fees.

To recover attorney fees, an eligible party must also be entitled to attorney fees. *Anderson v. Sec'y of Health and Human Services,* 80 F.3d 1500, 1504 (10th Cir. 1996). This requires analyzing four factors: "(1) the benefit to the public, if any, derived from the case, (2) the commercial benefit to the complainant, (3) the nature of the complainant's interest in the records sought, and (4) whether the government's withholding of the records had a reasonable basis in the law." *Id.*

## III.   Discussion

A. Entitlement to Attorney Fees under FOIA

The DOL acknowledges that Hull is a substantially prevailing party eligible for attorney fees. I therefore must analyze the four factors to determine if Hull is entitled to attorney fees.

1.      Public Benefit

The test for determining the public benefit of a FOIA disclosure is "whether the disclosure will assist the citizenry generally in making an informed judgment as to governmental operations." *Aviation Data Service v. Federal Aviation Administration*, 687 F.2d 1319, 1323 (10th Cir. 1982.) A public benefit must be more than the benefit derived from "bringing the government into compliance with the FOIA" or "securing for the public at large the benefits assumed to flow from the public disclosure of government information." *Id.* Rather, a FOIA disclosure must "likely add to the fund of information that citizens may use in making vital political choices." *Id.* A key factor is "the degree of dissemination and likely public impact that might be expected from a particular disclosure." *Id.*

The DOL argues that Hull's request does not serve the public interest because it mainly benefits the Association of U.S. West/Qwest Retirees ("AUSWR"), of which Hull is President. The DOL contends that while the members of the AUSWR have an interest in these documents, the broad public does not. Moreover, the DOL asserts, the documents here do not address government operations, but only the operations of the QPP, a private entity.

I find this argument unpersuasive. The AUSWR is a non-profit organization of over 20,000 current and future retirees. In addition to advocating for its own members, it is part of a broader network of similar entities that advocate for the rights of retirees nationwide. The information disclosed here will be disseminated publicly, free, on the AUSWR website. This contrasts with situations where the information is available only to those who pay for it. *Id.* at

1322, or where the information released was already publicly available. *See Tax Analysts v. United States Dep't of Justice,* 965 F.2d 1092, 1094 (D.C. Cir. 1992). Also, the QPP files reveal information about how the DOL oversees and investigates private pension plans, shedding light both on the QPP, and on the operations of the Department of Labor.

In considering the public benefit of these documents, I am also mindful of the overall situation facing private pensions nationally. Key Congressional leaders report that the pension system is "in crisis," and is "consistently in the headlines and rightfully on the minds of millions of American families." Press Release, Committee on Education and the Workforce, U.S. House of Representatives, *Nation's Editorial Pages Highlight Pension Crisis, Cite Growing Urgency for Congress to Act on Reforms*, December 1, 2005.  The members of AUSWR have witnessed "unrecoverable disasters across the nation with respect to many defined pension plans." (Reply Brief Page 8).  Numerous large private companies have "terminated their pension plans with severe gaps between the assets these plans held and the pension promises . . . made to their employees and retirees." *Private Pensions: Revision of Defined Benefit Pension Plan Funding Rules is an Essential Component of Comprehensive Pension Reform, Before the Committee on Finance, United States Senate*, Statement of David M. Walker, Comptroller General of the United States, United States Government Accountability Office, June 7, 2005, page 1, GAO-05-794T.  The federal agency that insures these plans, the Pension Benefit Guaranty Corporation faces "serious financial difficulties," and even "insolvency." *Id.*

Under these circumstances, millions of Americans, and not just the 20,000 members of the AUSWR have an interest in the status of the QPP and the effectiveness of the DOL in ensuring that private pension plans remain solvent and viable. These documents are of broad interest to

workers and retirees concerned about the future status of their pension, and to taxpayers generally who will be on the hook for any bail-out of the pension system. I conclude that the documents released here "add to the fund of information that citizens may use in making vital political choices" and serve the public interest.

    2.      Commercial Benefit to Complainant and Nature of Complainant's Interest

These two factors are related, and usually considered together. *Aviation Data,* 687 F.2d at 1322. Attorney fees are generally inappropriate where the plaintiff seeks the information for commercial benefit, or where "self interest was the primary factor in bringing the suit." *Id.*

The DOL asserts that Hull's interest here is commercial and private because her principle purpose is to protect her, and the AUSWR members' financial interests. Hull does not dispute that this FOIA action is, in part, an effort to protect the pension benefits of AUSWR members.

While there is unquestionably a private interest to Hull's request, it is not a commercial or pecuniary interest.  Hull seeks these documents in order to police the QPP on behalf of the 20,000 members of the AUSWR. While in some sense this is a personal interest, it is not personal to Hull, but to the 20,000 individuals whose pensions may be in jeopardy.  This is unlike a corporation seeking data for explicitly commercial purposes. *Aviation Data,* 687 F.2d at 1320-1321, or a newspaper using FOIA to obtain already public information in a format that is less "frustrating, cumbersome and time-consuming." *Tax Analysts v. United States Dep't of Justice,* 759 F. Supp. 28, 31 (D. D.C. 1991). Neither Hull nor the AUSWR have a commercial stake in this information, and it has not already been made public.

Moreover Hull's personal interest in these documents is not fatal to her claim. Public and private interests in FOIA documents are not mutually exclusive. *Piper v. U.S. Dep't of Justice,*

339 F. Supp.2d 13, 21, (D.D.C. 2004). Hull is certainly concerned about the viability of AUSWR's members' pensions. But where the interests of the members of the AUSWR overlap or coincide with the public interest in maintaining a sound pension system, AUSWR's private interests do not undermine its claim to attorney fees. *See Oil, Chemical & Atomic Workers Intern. Union, AFL-CIO v. U.S. Dep't of Energy,* 141 F. Supp. 2d 1, 7-8 (D.D.C. 2001).*rev'd on other grounds,* 288 F.3d 452 (D.C. Cir. 2002).

Finally, the DOL argues that Hull's claim is an effort to identify a possible litigation claim which, like using FOIA for discovery, is an invalid basis for seeking attorney fees. *See Ellis v. U. S.*, 941 F. Supp. 1068, 1079 (D. Utah 1996). The DOL's only evidence for this argument is another, unrelated lawsuit, filed by a different plaintiff, one year after this action was commenced. The DOL's argument here is purely speculative, and not persuasive.

    3.       Whether Government's Withholding Had a Reasonable Basis in Law

The final factor in this analysis is whether the Government's withholding had a "reasonable or colorable basis in the law." *Aviation Data,* 687 F.2d at 1324. Part of this analysis is whether the Government's delay in providing documents was "obdurate or recalcitrant," or shows bad faith. *Ellis,* 941 F. Supp. at 1080.

The only documents that DOL sought to withhold that were subject to an Order of this Court are the nine pages of the 67 reviewed *in camera,* for which the DOL claimed exemption 5, and the 125 pages of Service Contracts for which the DOL claimed exemption 4. The nine pages consist of a report on a prior investigation of the QPP, initiated in 1995 and closed in 2001. Most of these pages appear to be routine entries in database format in a case file. The DOL, citing *Vaughn v. Rosen,* 523 F.2d 1136, 1143-1144 (D.C. Cir. 1975), contends that language on one of

the nine pages describing the scope of the investigation is "an opinion on a legal matter" and therefore covered by exemption 5.

I do not find this argument to be persuasive. The statement the DOL refers to is a factual statement of the scope of a closed investigation, not an opinion on a legal matter. In *Vaughn,* the D.C. Circuit stated explicitly that pre-decisional materials are only exempt if they are "part of the agency give and take of the deliberative process by which the decision itself is made." *Id.* at 1144. The DOL does not explain how these documents can be part of the DOL's "give and take" related to a subsequent investigation. *Vaughn* specifically addressed "summaries of past administrative determinations" and concluded that "it is beyond dispute that such documents would not be exempt from disclosure." *Id.* In *Casad v. U.S. Dep't of Health and Human Services,* 301 F. 3d 1247, 1252 (10th Cir. 2002), the court found a document pre-decisional because it was an interim agency recommendation in a longer process. The DOL has offered no evidence that this statement is similarly pre-decisional. I conclude that withholding these 9 pages was unreasonable.

The DOL only released the 125 pages of Service Contracts after this Court ruled that DOL had no valid basis to withhold them, and after Hull filed a motion for summary judgment to obtain their release. In the December 2005 Order, I did not conclude that exemption 4 could not, by law, cover these documents, only that DOL's affidavit was insufficient. DOL had a colorable legal argument; it merely failed to support its argument with sufficient facts. Additionally, the DOL asserted that Hull had waived her right to receive these documents, an argument I rejected but that has some support in law. I therefore conclude that the DOL's initial denial of these documents was not unreasonable.

Hull also contends that the DOL's pattern of providing documents intermittently and only

in order to avoid a Court order constitutes obdurate behavior and bad faith. In the December 2005 Order I summarized Hull's contentions of DOL foot-dragging and obstructionism stretching throughout the two year history of this case. I expressed concern about DOL's behavior, but concluded that, while disturbing, it did not rise to the high standard necessary for finding bad faith. While DOL does not in general, deny Hull's allegations, it offers detailed specific explanations for each instance of delay, attributing them to some combination of internal mis-communication, changing circumstances or honest mistakes, and in one case apologizes to the court and to Hull for the inconvenience its errors have caused.

Despite my misgivings about the DOL's behavior in this case, the evidence presented is more suggestive of ineptitude than of bad faith. The record does not contain evidence that DOL's non-disclosure "was designed to avoid embarrassment or to thwart the requestor." *Blue v. Bureau of Prisons,* 570 F.2d 529, 534 (5th Cir. 1978). The DOL eventually disclosed most of the documents Hull requested. The DOL's behavior here is similar to the kind of "foot dragging," *Guam Contractors Ass'n v. U.S. Dep't of Labor,* 570 F. Supp. 163, 170 (D. Cal. 1983), "unprofessional practice," *Frydman v. Dep't of Justice,* 852 F. Supp. 1497, 1512 (D. Kan. 1994), and "sluggish response" and "failure to meet deadlines," *Simon v. U.S.,* 587 F. Supp. 1029, 1032 (D.D.C. 1984), that courts generally find falls short of bad faith or obdurate behavior.

In balancing these four factors, I conclude that disclosure serves the public interest and that this public interest outweighs Hull's non-commercial private interest in these documents. DOL's non-disclosures, mostly, had a colorable basis in law, and while the DOL's "bureaucratic mistakes" do not rise to the level of bad faith, they certainly do not overcome my analysis of the other factors. I conclude that Hull is entitled to attorney fees.

B.    Amount of Attorney Fees

Hull seeks attorney fees of $32,400 plus expenses of $570, based on an hourly rate of $300, for her lawyer, Curtis Kennedy.  I determine the reasonableness of attorney fees by multiplying the hours an attorney reasonably spends on a case by a reasonable hourly rate. *Case v Unified School Dist. No. 233, Johnson County*, 157 F.3d 1243, 1249 (10th Cir. 1998). This establishes the "lodestar" figure. *Id.*  The party seeking fees bears the burden of demonstrating the reasonableness of fees, and "of documenting the appropriate hours expended and hourly rates." *Id.* The District Court should rely on prevailing local market rates for lawyers of similar experience. *Id.* at 1255. When the Government opposes a plaintiff's motion for attorney fees, it bears the burden of providing "equally specific countervailing evidence" to rebut plaintiff's claims. *Piper,* 339 F. Supp.2d at 24.

The DOL does not dispute the number of hours Hull claims or the sufficiency of her documentation. The DOL also does not argue specifically that Kennedy's rates are unreasonable. Rather, the DOL asserts that Hull has failed to show that $300/hour is reasonable in the Denver area. Hull has provided an affidavit from Kennedy stating that $300/hour is his "customary hourly rate," and that Kennedy is a solo practitioner in Denver with more than twenty years of legal experience assisting employees and retirees of the former Bell system. Hull also cites to an unpublished opinion, *Bat v. A.G. Edwards & Sons, Inc.,* No. 04-CV-02225, 2006 WL 446078 (D. Colo. February 21, 2006), stating that $350 an hour is a reasonable rate for a Denver attorney with 24 years experience. The DOL does not dispute these facts, and offers no facts in rebuttal, but argues that Hull's claim fails for lack of proof of prevailing market rates.

I disagree. Where, as here, the parties do not provide the court with evidence of market

9

rates, the court may rely on other evidence, including its own knowledge of the prevailing market rates and a party's statement regarding its usual rates when working on cases in its field of expertise. *Id.* at 1257.  Since the Government has provided no specific information to rebut Hull's claim, I may accept her statement of hours and rates. *Piper,* 339 F. Supp.2d at 24. However, I also conclude, based on my own knowledge of the rates of lawyers with twenty plus years of experience in the Denver area, that $300 an hour is reasonable.

Establishing the hourly rate and the number of hours does not end the inquiry. I also must evaluate the total attorney fees claimed based on the level of success Hull achieved. *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983). Where a plaintiff achieves only partial success, it may be appropriate to reduce the total fee. *Id.* at 436. However, where a plaintiff loses on some claims but still achieves substantial success, reducing the fee may be inappropriate if the successful and unsuccessful claims are closely related. *Id.* at 435. "The most critical factor is the degree of success obtained." *Id.* at 436.

Hull filed this suit to make the DOL disclose its entire QPP investigation case file, consisting of about 6400 pages. During the course of the litigation, during which Hull incurred legal fees filing and responding to numerous motions, the DOL disclosed all but about 454 pages. Of these, the December 2005 Order denied summary judgment to the DOL on 125 pages, granted summary judgment to the DOL on  267 pages, and granted Hull's motion for *in camera* review of 62 pages. Of these 62 pages, the January 2006 Order directed DOL to release 9 pages.

Under these circumstances, I find that Hull "achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Hensley,* 461 U.S. at 434. This entire litigation involves a single FOIA claim on a single set of documents, thus making

every aspect of this case closely intertwined.  While Hull only achieved partial success in the specific issues governed by the two Orders, Hull obtained most of the goals she sought in her overall lawsuit, obtaining the QPP investigation file. "[W]hen a plaintiff achieves the principal goal of her lawsuit, lack of success on some of her interrelated claims may not be used as a basis for reducing the plaintiff's fee award." *Robinson v. City of Edmond,* 160 F.3d 1275, 1283 (10th Cir. 1998). This applies even to time spent on settled claims. *Whalen v. Unit Rig, Inc.,* 974 F.2d 1248, 1254 (10th Cir. 1992). Since Hull's claims were closely intertwined, and she achieved her principal goals, she is entitled to the hours she reasonably devoted to this litigation.

The DOL argues that Hull is entitled to attorney fees only to the degree her success derived from an Order of this court. Relying on *Buckhannon,* the DOL contends that Hull cannot claim legal expenses for the documents that the DOL released that were unrelated to a court-ordered "material alteration of the legal relationship of the parties," since for these documents Hull did not "substantially prevail." *Buckhannon,* 532 U.S. at 604.

This argument is inapt. *Buckhannon* addressed the level of success necessary for a litigant to be eligible for attorney fees, not the reasonableness of fees for a partially successful litigant. One District Court rejected this exact argument from another federal agency, stating that "[I]t is incoherent to say that a plaintiff did or did not substantially prevail in part of its litigation. A plaintiff does or does not prevail with respect to the whole litigation." *Judicial Watch, Inc. v. Dep't of Commerce,* 384 F. Supp. 2d 163, 168 n.1 (D.D.C. 2005). Whether a party substantially prevails is a "threshold determination" for fee eligibility, while the degree of success must be analyzed considering  "all of the circumstances surrounding the litigation." *Id.*

Additionally, the Tenth Circuit, even since *Buckhannon,* has held that partially successful

11

plaintiffs can recover attorney fees for unsuccessful claims that are closely related to their principle claims which are successful. *Chavez v. Thomas & Betts Corp.,* 396 F.3d 1088, 1103 (10th Cir. 2005).   Accepting the DOL's argument would require me to reach the implausible conclusion that plaintiffs may recover attorney fees for closely related failed claims, but not for closely related claims that settle or become moot. I decline to do so.

My conclusion is supported by the overall nature of this litigation. As recounted in the December 2005 Order, this case has been marked by a pattern of DOL denying Hull documents, Hull seeking relief, DOL changing its position about some aspect of its earlier denial, releasing some documents, seeking summary judgment on the remaining documents, Hull opposing these motions and then this pattern repeating. As discussed above, while I am not persuaded that this shows bad faith, it does mean that I measure Hull's success in this case by DOL's overall disgorgement of documents, rather than on Hull's success in those specific issues resolved by an Order. DOL's behavior was not malicious, but it does render Hull's legal success, narrowly construed, inseparable from her overall success in obtaining documents.

However, the DOL is correct that it is inappropriate to award fees for unsuccessful claims where these claims are readily separable. *Anderson,* 80 F.3d at 1506.  In this case, Hull expended 14.2 hours on the motion for summary judgment for which she was only partially successful. At issue in this motion were 454 pages of documents, and she obtained judicially ordered relief on about 192 pages (125 pages of service contracts and 67 pages subject to *in camera* review.) Since this motion was only about 40% successful, I reduce the number of hours she may claim on this motion by 60%, or by 8.5 hours.

Also, Hull claims, curiously, "fifteen (18) hours" for time spent replying to DOL's

response to the motion for attorney fees. I assume that this figure is intended to be 15, not 18 hours. I therefore deduct an additional 3 hours. Hull's final count of hours is reduced by 11.5 hours, for a total of 96.5 hours, and total fees of $28,950.  Hull also claims expenses of $570 for court filing fees and for reproducing about 6000 pages of documents. Because these costs relate to the litigation as a whole, I do not adjust them.

C.      Judicial Decree Under FOIA

        Hull in her complaint sought not only attorney fees, but also a judicial decree stating that the DOL acted arbitrarily and capriciously. Under 5 U.S.C. § 552(a)(4)(F), a district court may issue a "written finding" that "the circumstances surrounding the withholding (of documents) raise questions whether agency personnel acted arbitrarily and capriciously with respect to the withholding." *Id.* The DOL's conduct does not rise to the level necessary to merit a referral to the Office of Special Counsel. Despite DOL's own admission of bureaucratic mistakes, Hull did eventually get the documents it requested. DOL did not lie to this court, or disobey or ignore any orders of this court. A judicial decree under FOIA is not warranted.

D.      Sanctions Under 28 U.S.C. § 1927

        Hull also argues that she is entitled to attorney fees in the form of sanctions under 28 U.S.C. § 1927. Section 1927 reads:

> "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

        Relief under § 1927 is available only against attorneys. *Steinert v. Winn Group, Inc.,* 440 F.3d 1214, 1222 (10th Cir. 2006).  Hull asserts this claim explicitly against the DOL, and not

13

against United States Attorney Michael Johnson, DOL's attorney of record. Hull therefore cannot get relief under this statute

.       Therefore, it is so Ordered that Hull's motion for attorney fees and judicial decree (Docket # 41) is granted, in part and denied, in part as follows:

      1) Hull is awarded attorney fees of $28,950 and costs of $570.00; and

      2) Hull's motion for a judicial decree under 5 U.S.C. § 552(a)(4)(F) is DENIED; and

      3) Hull's motion for sanctions under 28 U.S.C. § 1927 is DENIED.

      It is further Ordered that the clerk shall enter a Judgment in accordance with this Order and the Order of December 2, 2005 (Docket # 28), and the Order of January 13, 2006 (Docket # 32), and

      It is further Ordered that this case is closed.


**DONE and ORDERED,** this ___30th___ day of May, 2006 at Denver, Colorado.


                  ___s/Lewis T. Babcock_____
                  United States District Chief Judge